UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
LOUISVILLE DIVISION
CIVIL ACTION NO. 3:23-CV-00022-CRS-RSE

**JAMES D.**                                                                                                    **PLAINTIFF**

**VS.**

**KILOLO KIJAKAZI**                                                                                          **DEFENDANT**
*Acting Commissioner of Social Security*

**FINDINGS OF FACT, CONCLUSIONS OF LAW,
AND RECOMMENDATION**

The Commissioner of Social Security ("Commissioner") denied James D.'s ("Claimant's") applications for disability and disability insurance benefits. Claimant now seeks judicial review of the Commissioner's decision pursuant to 42 U.S.C. § 405(g). (DN 1). Claimant moved for summary judgment and included a Fact and Law Summary in support. (DN 14). The Commissioner also filed a Fact and Law Summary. (DN 16). The District Judge has referred the case to the undersigned United States Magistrate Judge to review the Fact and Law Summaries and submit Findings of Fact, Conclusions of Law, and Recommendations pursuant to 28 U.S.C. § 636(b)(1)(B). (DN 13).

**I. Findings of Fact**

Claimant is forty-six years old, a husband and father of one child, and has earned his GED. (Tr. 39, 231). Claimant was employed as a truck driver before a workplace incident caused him to stop working. (Tr. 39). As a truck driver, Claimant was required to unload items from trucks and drag heavy fuel hoses. (Tr. 41). Claimant currently participates in daily activities such as driving, physical therapy exercises, going out to eat, and light house and yard work. (Tr. 56–57, 266).

On July 16, 2020, Claimant filed an application for disability insurance benefits ("DIB") under Title II of the Social Security Act, 42 U.S.C. § 401, alleging disability beginning on

1

December 28, 2019. (Tr. 89, 229). Specifically, Claimant based his claim for disability on his neck injury, left side body numbness, spinal cord injury, partial paralysis on left side, depression, bowel control issues, and urination control issues. (Tr. 255).

The Commissioner originally denied Claimant's application on September 9, 2020 (Tr. 98) and again on reconsideration on January 26, 2021, (Tr. 117). At Claimant's request Administrative Law Judge Gary Suttles ("ALJ Suttles") conducted a hearing on December 1, 2021, in Franklin, Tennessee. (Tr. 35–70). Claimant, represented by counsel, appeared by telephone.[1] (Tr. 38). A vocational expert also attended the hearing telephonically. (Tr. 38). ALJ Suttles issued an unfavorable decision on December 15, 2021. (Tr. 13).

ALJ Suttles applied the traditional five-step sequential analysis promulgated by the Commissioner for evaluating a disability claim, 20 C.F.R. § 404.1520, *Kyle v. Comm'r of Soc. Sec.*, 609 F.3d 847, 855 (6th Cir. 2010), and found as follows. First, Claimant has not engaged in any substantial gainful activity since the onset date of December 28, 2018. (Tr. 18). Second, Claimant suffers from the severe impairments of degenerative disc disease with left-sided neuropathy and numbness; carpal tunnel syndrome; and obesity. (Tr. 19–21). Third, Claimant's condition does not meet or medically equal the severity of a listed impairment from 20 C.F.R. § 404, Subpt. P, App'x 1. (Tr. 21). Additionally, Claimant has the residual functional capacity ("RFC") to perform "light work" with the following limitations:

> he can lift and carry 20 pounds occasionally and 10 pounds frequently; sit, stand, and walk six of eight hours each for a full eight-hour workday; his push/pull and gross/fine dexterity is unlimited except for occasional push/pull with the lower extremities, bilaterally, occasionally lift and reach overhead with the left upper extremity, and frequent hand use, fingering, feeling and handling, bilaterally; he can occasionally climb stairs but not ladders or running; he can occasionally bend,

---

[1] Although the beginning of the hearing transcript states Claimant was physically present, the questioning indicated otherwise. (Tr. 37–38). Both Claimant and his attorney consented to a telephonic hearing (Tr. 38) and counsel submitted a consent form. (Tr. 174).

      stoop, crouch, and crawl but never squat; and he requires no exposure to heights or dangerous machinery.

(Tr. 21–27). Fourth, ALJ Suttles found Claimant is unable to perform his past relevant work. (Tr. 27). Lastly, ALJ Suttles found, despite the RFC restrictions, Claimant could perform a significant number of jobs in the national economy. (Tr. 28–29).

      Due to these findings, ALJ Suttles deemed Claimant not disabled. (Tr. 29). Claimant appealed the decision, and the Appeals Council declined to review, finding Claimant's reasons for disagreement did not provide a basis for changing ALJ Suttles' decision. (Tr. 1). The denial became the final decision of the Commissioner and Claimant appealed to this Court. (DN 1).

## II. Standard of Review

      When reviewing the administrative law judge's decision to deny disability benefits, the Court may "not try the case de novo, nor resolve conflicts in the evidence, nor decide questions of credibility." *Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994) (internal citations omitted). Instead, the Court's review of the administrative law judge's decision is limited to an inquiry as to whether the administrative law judge's findings were supported by substantial evidence, 42 U.S.C. § 405(g); *Foster v. Halter*, 279 F.3d 348, 353 (6th Cir. 2001) (internal citations omitted), and whether the administrative law judge employed the proper legal standards in reaching his conclusion. *See Landsaw v. Sec'y of Health & Human Servs.*, 803 F.2d 211, 213 (6th Cir. 1986). Substantial evidence exists "when a reasonable mind could accept the evidence as adequate to support the challenged conclusion, even if that evidence could support a decision the other way." *Cotton v. Sullivan*, 2 F.3d 692, 695 (6th Cir. 1993). The Supreme Court has clarified "whatever the meaning of 'substantial' in other contexts, the threshold for such evidentiary sufficiency is not high[.]" *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (internal citations omitted).

### III. Conclusions of Law

Claimant's Fact and Law Summary raises challenges to Finding Nos. 3, 5, 10, and 11 from ALJ Suttles' decision. (DN 14-1). However, Claimant's Memorandum in Support only develops claims relating to ALJ Suttles' RFC determination. Claimant's Memorandum focuses on two arguments: (1) that ALJ Suttles did not consider the majority of the objective medical evidence supporting his ongoing impairments and limitations to his arm, hand, and leg; and (2) that ALJ Suttles did not properly consider his subjective allegations as to his limitations. (DN 14-2, at PageID # 1276-77). The Commissioner contends Claimant's arguments as to Finding No. 3 (Step Two) and Finding Nos. 10 and 11 (Step Five) should be deemed waived because Claimant did not adequately develop these arguments. (DN 16, at PageID # 1285, 1296).

#### A. Finding No. 3 (Step Two)

Claimant argues his impairments are more severe than ALJ Suttles described and that ALJ Suttles diminished the severity of his conditions by failing to consider certain evidence. (DN 14-1). According to Claimant, ALJ Suttles' findings do not align with the entirety of the medical record. (*Id.*). The Commissioner responds that Claimant has waived this claim by failing to develop his argument, but that regardless, substantial evidence supports the ALJ's determination. (DN 16, at PageID # 1285).

Claims asserted in a "perfunctory manner" without "some effort at developed argumentation, are deemed waived." *Anthony v. Astrue*, 266 F. App'x 451, 458 (6th Cir. 2008); *see also McPherson v. Kelsey*, 125 F.3d 989, 995 (6th Cir. 1997). "[A] brief 'must contain the appellant's contentions and the reasons for them, with citations to the authorities and parts of the record on which the appellant relies.'" *Beaty v. Comm'r of Soc. Sec.*, No. 19-6310, 2020 U.S. App. LEXIS 29881, at *4–5 (6th Cir. Sep. 17, 2020) (quoting *Bouyer v. Simon*, 22 F. App'x 611, 612

4

(6th Cir. 2001)). Whether Claimant waived his step-two claim by failing to develop any argument is a close call. Though his Memorandum does not make any argument regarding ALJ Suttles' step-two findings as to the severity of his impairments, Claimant outlines facts supporting his contention in his Fact and Law Summary. The Court declines to deem Claimant's challenge waived.

Even so, Claimant's argument is meritless. It is well established that step two of the evaluation process is a "*de minimis* hurdle" because "an impairment can be considered not severe only if it is a slight abnormality that minimally affects work ability regardless of age, education, and experience." *Higgs v. Bowen*, 880 F.2d 860, 862 (6th Cir. 1988). Where an ALJ finds at least one severe impairment, "the question of whether the ALJ characterized any other alleged impairment as severe or not severe is of little consequence." *Pompa v. Comm'r of Soc. Sec.*, 73 F. App'x 801, 803 (6th Cir. 2003); *see also Anthony v. Astrue*, 266 F. App'x 451, 457 (6th Cir. 2008) (where the ALJ found that claimant had severe impairment, "[t]he fact that some of the [claimant's] impairments were not deemed to be severe at step two is [] legally irrelevant.").

In his step-two analysis, ALJ Suttles determined Claimant's degenerative disc disease with left-sided neuropathy and numbness, carpal tunnel syndrome, and obesity were severe impairments. (Tr. 19). ALJ Suttles noted these conditions "significantly limit [Claimant's] ability to perform basic work activities . . ." (*Id.*). ALJ Suttles further found Claimant's hypertension, gastroesophageal reflux disease, obstructive sleep apnea, substance use disorder, alcohol abuse, depressive disorder, and anxiety disorder constitute non-severe impairments. (*Id.*).

No error resulted from ALJ Suttles failing to discuss medical evidence relating to Claimant's severe impairments at step two. So long as an ALJ finds a claimant suffers from at least one severe impairment at step two, he must continue with the remaining steps in the disability

evaluation and may then properly consider additional conditions in determining whether the claimant retained sufficient residual functional capacity to allow the claimant to perform substantial gainful activity. *See Maziarz v. Sec'y Health & Human Servs.*, 837 F.2d 240, 244 (6th Cir. 1987); *Nejat v. Comm'r of Soc. Sec.*, 359 F. App'x 574, 577 (6th Cir. 2009). Because ALJ Suttles found Claimant suffered from at least one severe impairment, he was required to continue with the remaining steps of the disability evaluation, which he did. Any arguments regarding the sufficiency of ALJ Suttles' evaluation of the evidence should be addressed when evaluating Claimant's challenges to ALJ Suttles RFC determination.

*B. Finding No. 5 (Residual Functional Capacity)*

Claimant argues ALJ Suttles' RFC determination does not reflect the most he can do because it allows for far more walking, standing, and using of the left hand than Claimant can perform. (DN 14-1, at PageID # 1260-61). According to Claimant, the medical evidence does not support ALJ Suttles' finding that Claimant can perform six hours each of walking and standing, as well as using his left hand frequently. (*Id.*). Claimant references evidence in the record consistently showing his gait and balance were disturbed after surgery, that his left hand will not completely straighten, and that his left hand is numb. (*Id.*). Claimant also lists objective medical findings that ALJ Suttles failed to consider that allegedly support ongoing and further limitation for Claimant's arm, hand, and leg. (DN 14-2, at PageID # 1276). These include Dr. Glassman's post-operative medical records, Dr. Vaughn's findings, Dr. Travis' findings, physical therapy assessments from November 2019, June 2020, and November 2021, and Dr. Glassman's 2021 exam.[2] (*Id.*).

The Commissioner responds that substantial evidence supports ALJ Suttles' RFC

---

[2] Claimant fails to provide citations to the Administrative Record for any of these objective medical findings that allegedly support further limitation.

6

determination. (DN 16, at PageID # 1285-86). ALJ Suttles conducted a thorough analysis of the record, according to the Commissioner. (*Id.*). As for the evidence Claimant asserts ALJ Suttles ignored, the Commissioner explains Claimant does not demonstrate this evidence requires more limitations in the RFC or undermines the ALJ's decision. (*Id.* at PageID # 1287). The Commissioner concludes that Claimant is essentially asking the Court to reweigh the evidence in the case, which exceeds the permissible standard of judicial review. (*Id.*).

A claimant's RFC is defined as the "maximum degree to which the individual retains the capacity for sustained performance of the physical-mental requirements of jobs." 20 C.F.R. Pt. 404, Subpt. P, App. 2 § 200.00(c). Put otherwise, the RFC is the most a claimant can do despite their physical and mental limitations. 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1). An ALJ bases their RFC determination on "all of the relevant medical and other evidence" in the case record. *Id.* (a)(3). This requires the ALJ to evaluate the persuasiveness of the medical opinions in the record and assess the claimant's subjective allegations. 20 C.F.R. §§ 404.1520c, 404.1529(a).

In assessing a claimant's RFC, an ALJ must consider all the evidence in a claimant's record. 20 C.F.R. § 416.945(a)(1) ("We will assess your residual functional capacity based on all the relevant evidence in your case record."). But the ALJ is not required to discuss every single piece of record evidence in his decision. *See, e.g., Thacker v. Comm'r of Soc. Sec.*, 2004 WL 1153680, at *3 (6th Cir. May 21, 2004) (ALJ need not discuss every piece of evidence in the record). "Although required to develop the record fully and fairly, an ALJ is not required to discuss all the evidence submitted, and an ALJ's failure to cite specific evidence does not indicate that it was not considered." *Simons v. Barnhart*, 114 F. App'x 727 (6th Cir. 2004) (quoting *Craig v. Apfel*, 212 F.3d 433, 436 (8th Cir. 2000)); *Deaner v. Comm'r of Soc. Sec.*, 840 F. App'x 813, 819

(6th Cir. 2020) (quoting *Daniels v. Comm'r of Soc. Sec.*, 152 F. App'x 485, 489 (6th Cir. 2005)).

ALJ Suttles' residual functional capacity determination started by summarizing Claimant's testimony relating to his neck and back pain from a workplace injury, post-operative recovery from neck surgery, pain management, physical therapy, his ability to use his left arm and hand and to carry and lift objects, his ability to walk and stand, and his daily activities. (Tr. 22-23). Though finding Claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms, ALJ Suttles determined Claimant's "statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record[.]" (Tr. 23). ALJ Suttles then spent the next four pages of his decision thoroughly discussing the medical evidence of record.

In flagging evidence allegedly not considered by ALJ Suttles, Claimant first argues that he failed to consider post-operative medical notes from Dr. Glassman. (DN 14-2, at PageID # 1276). Though ALJ Suttles did not discuss every report from Dr. Glassman, his decision clearly considered the evidence from him. (*See* Tr. 24). For instance, ALJ Suttles discussed the six-month follow-up appointment Claimant had with Dr. Glassman which remarked on Claimant's "good range of motion of the cervical spine without pain" and "good ROM [range of motion] of the shoulders and elbows." (Tr. 24 (citing Tr. 555)). Additionally, ALJ Suttles noted this examination found,

> 5/5 strength in all major muscle groups in the upper and lower extremities bilaterally; negative Phalen's and Tinel's signs; reasonable flexion and extension of the lumbar spine; good range of motion of the hips and knees bilaterally without pain; normal sensation and symmetric reflexes bilaterally; he has no weakness or headaches; and he had no myelopathic complaints.

(Tr. 24 (citing Tr. 555)). ALJ Suttles relied on Dr. Glassman's records but was not required to discuss every detail from his notes.

As for Dr. Vaughan, contrary to Claimant's contention, ALJ Suttles noted his report that the Claimant had difficulty walking, and he walked with a slow pace and used a cane. (Tr. 24 (citing 455, 499–500)). Additionally, ALJ Suttles highlighted that Dr. Vaughan believed Claimant had reached maximum medical improvement just six months after the injury. (Tr. 24 (citing Tr. 455)). Regardless, ALJ Suttles deemed Dr. Vaughan's opinion of Claimant's physical limitations as unpersuasive because it was "not consistent with the entirety of the claimant's treatment history." (Tr. 27).

This trend continues as ALJ Suttles' decision mentions numerous reports Claimant asserts he did not consider. First, ALJ Suttles' decision recognized a November 2019 physical therapy assessment showing left-sided pain and weaknesses. (*See* DN 14-2, at PageID # 1276 ("The ALJ did not consider the November 2019 physical therapy assessment[.]"); Tr. 24 (acknowledging the November 2019 physical therapy assessment notes)). ALJ Suttles notes the assessment of "neck pain, left upper extremity weakness, left lower extremity pain, difficulty transferring positions, decreased overall function, decreased sensation, decreased left upper and lower extremity strength, and difficulty with his gait." (Tr. 24). ALJ Suttles likewise mentioned Claimant's discharge from physical therapy in February of 2020 with his "'goals met' and 'rehab completed.'" (Tr. 25). The same is true for Claimant's return to physical therapy in June of 2021, with ALJ Suttles mentioning the report of "increased pain, weakness in his left lower extremity, tightness in his hamstrings, left greater than right, and gait problems." (Tr. 25).

Although ALJ Suttles did not explicitly address Dr. Travis' note regarding Claimant's unusual gait pattern, ALJ Suttles still addressed his report. He discussed Dr. Travis' findings of alcohol abuse, medication controlled mental health issues, preexisting cervical changes, and dormant cervical stenosis. (Tr. 19, 23).

9

ALJ Suttles also discussed the findings from Claimant's November 2021 physical therapy session. (Tr. 25). During this examination, Claimant reported "numbness from his neck to his left hand, pain and burning in his mid and low back, and numbness down his left leg into the lateral portion of his foot." (Tr. 25). The notes from this visit also state that Claimant reported being "independent in his activities of daily living without difficulty." (Tr. 26).

Claimant's argument that ALJ Suttles failed to consider evidence that demonstrates he is more severely impaired than the RFC limitations assigned is not successful because the ALJ's decision shows he considered most of this evidence. And, even if he hadn't, ALJ Suttles was not required to articulate every piece of evidence from Claimant's medical records. ALJ Suttles' RFC analysis illustrates that he comprehensively considered the record evidence submitted.

Again, the question for the Court on review is whether ALJ Suttles' RFC determination was supported by substantial evidence in the record – not whether ALJ Suttles appropriately weighed the evidence. The evidence ALJ Suttles relied on was not one-sided as Claimant believes. While it is unnecessary to repeat ALJ Suttles' review of the evidence verbatim, several points are noteworthy. ALJ Suttles discussed evidence of Claimant's workplace accident and conflicting opinions from physicians as to whether his injuries were an aggravated preexisting condition or not. (Tr. 23 (citing Ex. 2F; 4F, 5F, 7F, 18F)). He recounted Claimant's treatment prior to and following the surgery, including physical therapy updates and starting of pain management in October of 2021. (Tr. 24-26). In reviewing Dr. Vaughn's treatment notes, ALJ Suttles highlighted findings of Claimant's difficulty standing and walking, walking at a slow pace with a cane, symptoms of numbness, pain, and weakness in his neck and upper and lower extremities. (Tr. 24 (citing Tr. 546-47)). Other notes cited by ALJ Suttles, however, reflected Claimant in September of 2019 as having a good range of motion of the cervical spine without pain, good range of motion

in shoulders and elbows, 5/5 strength in all major muscle groups in upper and lower extremities bilaterally, good range of motion in hips and knees bilaterally without pain, and reasonable flexion and extension of the lumbar spine (Tr. 24, citing (Tr. 553-55)), and, in February of 2020 as moving better and safer, and being discharged from therapy with goals met. (*Id.* (citing Tr. 1084)). Additional records cited by ALJ Suttles showed improvement in May of 2020, with several normal results, including normal range of motion and normal gait. (Tr. 25 (citing Tr. 941-42)). While ALJ Suttles cited some records following these normal findings that report Claimant's increased pain, Claimant started pain management around that time and notes from November of 2021 show Claimant was independent in his daily activities without difficulty. (Tr. 26 (citing Tr. 1215, 1218)).

As evidenced above, ALJ Suttles properly considered the entire record in reaching his conclusions. Substantial evidence exists to support ALJ Suttles' RFC determination and his finding that Claimant's impairments are less severe than alleged.

### *C. Finding Nos. 10 and 11 (Step Five)*

Claimant lastly contests ALJ Suttles' findings at step five of the evaluation process by arguing they lack substantial evidence and that Claimant cannot perform a substantial number of jobs in the national economy because he cannot stand and walk enough to perform light work and cannot use his left hand enough to perform sedentary work. (DN 14-1, at PageID # 1261). The Commissioner responds that these claims have been waived through failure to develop an argument and that substantial evidence supports ALJ Suttles' findings. (DN 16, at Page ID # 1296).

Though Claimant's argument is presented in a conclusory manner in his Fact and Law summary, his brief expands on his general argument that ALJ Suttles' findings lacked substantial evidence by pointing to evidence Claimant believes was not considered. (DN 14-2, at PageID # 1276). The Court, however, has already analyzed and rejected Claimant's arguments that ALJ Suttles' RFC determination is not supported by substantial evidence in the record. Accordingly,

11

Claimant's arguments as to Finding Nos. 9 and 10 should be deemed waived.

Even were Claimant's arguments not waived, at Step Five ALJ Suttles determined what jobs are available to a hypothetical individual with Claimant's RFC and with Claimant's background. An independent vocational expert ("VE") may testify as to what—or if—jobs exist which would be appropriate for the Claimant, based on his RFC, within the national economy. *See Anderson v. Comm'r of Soc. Sec.*, 406 F. App'x 32, 36 (2010) ("The VE does not testify as to what the claimant is capable of doing, but rather as to what jobs are available, given the claimant's physical capabilities."). The VE here determined, based on Claimant's RFC, that Claimant would be capable of performing the job of inspector, office helper, or cafeteria attendant. (Tr. 29). After examining the VE, ALJ Suttles found the VE's testimony persuasive and concluded Claimant could work a significant number of jobs in the national economy and was therefore not disabled. (*Id.*). Claimant does not demonstrate that the VE's testimony was inaccurate or that ALJ Suttles improperly relied on this testimony.

Substantial evidence supports ALJ Suttles' step-five determination, and Claimant has submitted no meaningful argument or evidence to the contrary.

### IV. Recommendation

For the above-stated reasons, the Court finds substantial evidence supports ALJ Suttles's decision. **IT IS THEREFORE RECOMMENDED** the final decision of the Commissioner be affirmed.

## NOTICE

Therefore, under the provisions of 28 U.S.C. § 636(b)(1)(B) and (C) and Fed.R.Civ.P. 72(b), the Magistrate Judge files these findings and recommendations with the Court and a copy shall forthwith be electronically transmitted or mailed to all parties. Within fourteen (14) days after being served with a copy, any party may serve and file written objections to such findings and recommendations as provided by the Court. If a party has objections, such objections must be timely filed or further appeal is waived. *Thomas v. Arn*, 728 F.2d 813 (6th Cir.), *aff'd*, 474 U.S. 140 (1984).

Copies:   Counsel